1
               **UNITED STATES DISTRICT COURT**
               **WESTERN DISTRICT OF NEW YORK**

2


3
_____

UNITED STATES OF AMERICA,

4
                                  Case No. 1:15-cr-143

              Plaintiff,                 (LJV)

5


vs.                             March 18, 2019

6


DEMETRIUS YARBOROUGH, a/k/a Tu-Tu,

7
             Defendant.

8
_____

9


10
              **TRANSCRIPT OF SENTENCING**
      **BEFORE THE HONORABLE LAWRENCE J. VILARDO**
          **UNITED STATES DISTRICT JUDGE**

11


12
<u>APPEARANCES:</u>         JAMES P. KENNEDY, JR.
                     UNITED STATES ATTORNEY

13
                     BY: JOSEPH M. TRIPI, ESQ.
                     Assistant United States Attorney

14
                     Federal Centre
                     138 Delaware Avenue

15
                     Buffalo, New York 14202
                     For the Plaintiff

16


                     ADDELMAN LAW, PLLC

17
                     BY: DAVID R. ADDELMAN, ESQ.
                     69 Delaware Avenue

18
                     Suite 602
                     Buffalo, New York 14202

19
                     For the Defendant

20
<u>PROBATION:</u>          TINA E. BLACKMAN, USPO

21
<u>DEPUTY CLERK:</u>      COLLEEN M. DEMMA

22
<u>COURT REPORTER:</u>    ANN M. SAWYER, FCRR, RPR, CRR,
                     NYRCR, NYACR, Notary Public

23
                     Robert H. Jackson Courthouse
                     2 Niagara Square

24
                     Buffalo, New York 14202
                     Ann_Sawyer@nywd.uscourts.gov

25

1          (Proceedings commenced at 12:37 p.m.)

2          THE CLERK:  All rise.  United States District Court

3   for the Western District of New York is now in session, the

4   Honorable Lawrence J. Vilardo presiding.

5          THE COURT:  Please be seated.

6          THE CLERK:  15-CR-143, United States of America

7   versus Demetrius Yarborough.

8          Assistant United States Attorney Joseph M. Tripi

9   appearing on behalf of the government.

10          Attorney David R. Addelman appearing with defendant.

11  Defendant is present.

12          Also present is United States Probation Officer

13  Tina E. Blackman appearing for United States Probation Officer

14  Matthew G. Zenger.

15          This is the date set for sentencing.

16          THE COURT:  Good afternoon, everyone.

17          MR. TRIPI:  Good afternoon, Your Honor.

18          MR. ADDELMAN:  Good afternoon, Your Honor.

19          THE COURT:  Mr. Yarborough is before the Court for

20  sentencing on his previous plea of guilty to Count 1 of

21  the superseding information, and that charged that he

22  possessed 500 grams or more of cocaine with the intent to

23  distribute it and did distribute it in violation of 21, United

24  States Code, Sections 841(a)(1) and 841(b)(1)(B).

25          We're going to begin with some questions that I have

 1    for the lawyers and for you, Mr. Yarborough, about the

 2    presentence investigation report.  I'm then going to make sure

 3    that I've received and read all the sentencing-related

 4    submissions.  After that I'm going to make some findings of

 5    fact and calculate the applicable guidelines range.  And then

 6    before I state the sentence, I'm going to give the lawyers and

 7    you an opportunity to talk to me about anything you think is

 8    relevant to sentencing.

 9             So are there any questions before we begin from the

10    government?

11             MR. TRIPI:  No, Your Honor.

12             THE COURT:  From the defense?

13             MR. ADDELMAN:  No, Judge.

14             THE COURT:  Mr. Addelman, have you had enough time to

15    read the presentence report that was prepared on January 28th,

16    2019 and to review it with your client?

17             MR. ADDELMAN:  I have.

18             THE COURT:  And Ms. Blackman, there were no revisions

19    after January 28th; is that right?

20             USPO BLACKMAN:  That's correct, Your Honor.

21             THE COURT:  Mr. Addelman, did you explain the

22    contents of the report to your client?

23             MR. ADDELMAN:  I have.

24             THE COURT:  Do you have any concerns about his

25    ability to understand it?

```
 1              MR. ADDELMAN:  No, I don't.

 2              THE COURT:  Mr. Yarborough, did you receive a copy of

 3     the presentence report that was prepared on January 28th,

 4     2019?

 5              THE DEFENDANT:  Yes, Your Honor.

 6              THE COURT:  Did your attorney explain it to you?

 7              THE DEFENDANT:  Yes.

 8              THE COURT:  Do you understand it?

 9              THE DEFENDANT:  Yes.

10              THE COURT:  Do you need any more time to review it or

11     to talk to Mr. Addelman about it?

12              THE DEFENDANT:  No.

13              THE COURT:  Do you have any questions about it?

14              THE DEFENDANT:  No.

15              THE COURT:  Mr. Addelman, the defendant did not file

16     a statement with respect to sentencing factors, per se, but in

17     your sentencing memorandum you note that the defendant

18     reportedly received heroin from Mr. Gillon, but you contest

19     that he sold heroin.  Other than that, does the defendant want

20     to contest or change anything in the presentence report?

21              MR. ADDELMAN:  No, Judge.  And I apologize for not

22     including that paragraph that we don't contest.  We don't

23     contest the fact that it was reported.  We do contest that --

24     the truth of that report.

25              THE COURT:  Okay.  Yes.  And we're going to get to
```

USA v Demetrius Yarborough - Sentencing - 3/18/19

1    that in a -- in a second.

2          So you really don't contest anything that's in the

3    report, you just -- you just have an observation about

4    something that is included in it, and you disagree with what

5    was reported?

6          MR. ADDELMAN:  We don't think that that allegation

7    would have been found credible had we gone to trial, but --

8          THE COURT:  Right.

9          MR. ADDELMAN:  -- we don't doubt --

10         THE COURT:  That it would --

11         MR. ADDELMAN:  -- that it was reported.

12         THE COURT:  Okay.  Great.  Terrific.  Good.  So

13   you're not asking me to change anything in the report?

14         MR. ADDELMAN:  No.

15         THE COURT:  Great.  And -- and so with respect to

16   everything in the presentence report, am I correct that you

17   don't want to contest or change any of the facts or any of the

18   sentencing guidelines calculations; is that correct?

19         MR. ADDELMAN:  Correct.

20         THE COURT:  Okay.  Mr. Yarborough, do you want to

21   contest or change anything in the report?

22         THE DEFENDANT:  No.

23         THE COURT:  And does the government want to contest

24   or change anything in the report?

25         MR. TRIPI:  No, Your Honor.  The presentence

1   calculated a lower guideline than did the plea agreement, and

2   we filed the no-objection statement accordingly.

3          THE COURT:  Yep.  And that includes both the facts

4   and the guidelines calculation; is that right?

5          MR. TRIPI:  That's correct, Judge.

6          THE COURT:  Okay.  Mr. Addelman, I've received and

7   reviewed the defendant's sentencing memorandum; is that

8   everything?

9          MR. ADDELMAN:  Yes, Judge.

10         THE COURT:  And is there anything else you would like

11  to submit in writing today?

12         MR. ADDELMAN:  No.

13         THE COURT:  Mr. Tripi, I've received the government's

14  statement with respect to sentencing factors and the

15  government's amended and superseding statement with respect to

16  sentencing factors; is that everything?

17         MR. TRIPI:  Yes, Judge.

18         THE COURT:  And does the government want to submit

19  anything else in writing?

20         MR. TRIPI:  No, Your Honor.

21         THE COURT:  Mr. Addelman, I've reviewed the

22  sentencing memorandum and particularly page 3 which addresses

23  your concerns about paragraph 24, and as you correctly

24  observed and as 18, United States Code, Section 3661

25  indicates, there's no limitation on the background information

1    that I'm to receive and consider regarding character, conduct

2    of the person in front of me, and the like.

3           And, so, with respect to the 11(c)(1)(C) plea that

4    you've negotiated on behalf of your client and with respect to

5    the sentencing today, I'm considering only the conduct to

6    which the defendant pleaded guilty and for which he's accepted

7    responsibility, and that involves the 3.5 kilograms of

8    cocaine, or -- or the amount was between 2 and 3.5 kilograms

9    of cocaine.

10          I think it was actually 3 -- 3 kilos; is that -- is

11   that correct?  The wrappings indicated 3 kilos; is that right?

12          MR. ADDELMAN:  The government concluded that the

13   wrapping would have been consistent with 3 kilograms.  There

14   was no actual cocaine, just cocaine residue --

15          THE COURT:  Right, on the wrapper.

16          MR. ADDELMAN:  -- on the wrapping itself.

17          THE COURT:  Right.  And you've agreed that between 2

18   and 3.5 is what's involved?

19          MR. ADDELMAN:  We have.

20          THE COURT:  Yeah.  And so based on that, that's what

21   I'm going to consider, I see no need for a hearing.  It sounds

22   to me like you agree with that; is that right?

23          MR. ADDELMAN:  I do.

24          THE COURT:  Okay.  And, Mr. Tripi, anything you would

25   like to add?

1              MR. TRIPI:  No, Your Honor.

2              THE COURT:  Okay.  I previously accepted the

3    defendant's plea of guilty to Count 1 of the superseding

4    information, possession with intent to distribute 500 grams or

5    more of cocaine.

6              I note that in the plea agreement, the government and

7    the defendant have agreed pursuant to 11(c)(1)(C) of the

8    Federal Rules of Criminal Procedure that at the time of the

9    sentence I would impose a term of imprisonment of between 60

10   and 90 months.  The agreement also provided that if after I

11   reviewed the presentence report I rejected the plea agreement,

12   that the defendant and the government would have the

13   opportunity to -- to back out of that agreement, and the

14   defendant would have an opportunity to withdraw his plea.

15             I've deferred acceptance of the plea agreement, but

16   pursuant to 11(c)(4), I now accept the terms and the

17   conditions of the plea agreement that was signed on

18   October 29th, 2018, and my judgment and my sentence will be

19   consistent with it.

20             In that plea agreement, the government also agreed to

21   move to dismiss the open count of the second superseding

22   indictment against this defendant.  So I also make a charge --

23   I also make a finding that the charge to which the defendant

24   pled guilty, that is Count 1 of the superseding information,

25   adequately reflects the seriousness of the actual offense

1   behavior and that accepting the agreement will not undermine

2   the purposes of sentencing or the guidelines.

3          The defendant was initially charged in a large-scale

4   narcotics conspiracy with 15 other defendants, but the crime

5   to which the defendant pleaded guilty takes into account his

6   actual criminal conduct and the drugs attributable to him

7   following the execution of a search warrant at 22 Carl Street.

8          And so I believe that the plea of guilty and the plea

9   agreement adequately reflect the actual offense behavior, and

10  that accepting the agreement will not undermine the statutory

11  purposes of sentencing or the guidelines.

12         The government has filed an amended and superseding

13  statement with respect to sentencing factors accepting the

14  probation and pretrial service office's presentence report.

15  The defendant has indicated his acceptance on the record

16  today.

17         Based on the parties' submissions and representations

18  today in court, there are no disputes regarding the facts

19  contained in the presentence investigation report other than

20  the -- the objection to the, for want of a better term, to the

21  characterization in the report about what was reported and

22  whether -- and the accuracy of what was reported which does

23  not need to be resolved.

24         I also have reviewed that report.  Based on my

25  review, based on the parties' written submissions and based on

1  the positions taken on the record today, especially

2  Mr. Addelman's position on behalf of the defendant that he

3  does not contest the way the report is worded, that was

4  actually reported to the probation officer that that occurred.

5  I adopt the facts in the report as my findings of fact, and I

6  incorporate them into the record.

7       So I will now place the January 28th, 2019

8  presentence investigation report in the record under seal.  If

9  an appeal is filed, counsel on appeal will be given access to

10  the sealed report except that counsel will not be given access

11  to the recommendations section.

12       So let's now turn to the guidelines which I must

13  calculate and consider as an important part of my

14  determination of a sentence.  And I apologize to everybody in

15  the courtroom for the technical nature of what's about to

16  follow, but the guidelines themselves and the reasons behind

17  the guidelines make this a necessary step in the process.

18       Based on the parties' submissions and their

19  representations today in court, there are also no disputes

20  regarding the recommendations in the report as to the

21  applicable sections of the Sentencing Commission's advisory

22  guidelines.

23       The presentence investigation report calculates under

24  the 2018 version of the guidelines manual that

25  Section 2D1.1(a)(5) and 2D1.1(c)(7) provide for a base offense

1    level of 26, and that no adjustments for specific offense

2    characteristics apply.

3         The report then recommends that the offense level be

4    decreased by two levels under Section 3E1.1(a) of the

5    guidelines because the defendant has accepted responsibility

6    for his conduct.

7         So based on all that, the presentence report

8    calculates the total offense level to be 24.  26 minus 2

9    is 24.

10        The report then calculates the criminal history

11   category as III based on a criminal history score of 6.  Based

12   on my factual findings, I agree with the report's calculation

13   of both the offense level and the criminal history category.

14        So with a total offense level of 24 and a criminal

15   history category of III, the report calculates the applicable

16   guidelines range as a sentence of imprisonment of between 63

17   and 78 months; a fine range of $10,000 to $5 million; and a

18   period of supervised release of four to five years.  There's

19   also a mandatory special assessment of $100 that I must

20   impose.  I agree with all those calculations in the

21   presentence report, as well.

22        But notwithstanding those calculations, as I stated

23   earlier under Rule 11(c)(1)(C), the parties agree that at the

24   time of sentencing I would impose a term of imprisonment of at

25   least 60 months but no more than 90 months.

1            Mr. Yarborough, under the Supreme Court's decision in

2   United States versus Booker and the 2nd Circuit's decision in

3   United States versus Crosby, the Court must consider the

4   guidelines but it's not bound by them.

5            The Court also must consider the factors that are

6   included in 18, United States Code, Section 3553(a), and those

7   factors include: the nature and circumstances of the offense;

8   your history and your characteristics; the need for the

9   sentence to reflect the seriousness of the offense, to promote

10  respect for the law, and to provide a fair punishment to you;

11  the need to deter others from committing crimes and to protect

12  the public from your crimes; the need to provide you with

13  educational or vocational training in an attempt to

14  rehabilitate you; the types of sentences that are available;

15  any policy statements that are issued by the Sentencing

16  Commission; and sentences given to others who committed crimes

17  similar to the one to which you pleaded guilty.

18           I'm going to take all those factors into account, but

19  before I impose sentence I want to give the lawyers and you an

20  opportunity to talk to me about anything you think is

21  relevant.

22           So we're going to start with the government.

23  Mr. Tripi, does the government want to say anything?

24           MR. TRIPI:  Just very briefly, Judge.  We ask that

25  the Court impose sentence within the range set forth in the

USA v Demetrius Yarborough - Sentencing - 3/18/19

13

```
 1   plea agreement which also encompasses the range set forth in

 2   the presentence report based on the defendant's lengthy

 3   criminal history and his offense conduct in this case.

 4            THE COURT:  Okay.  Thank you.  And there are no

 5   identifiable victims, correct?

 6            MR. TRIPI:  That's correct, Judge.

 7            THE COURT:  And Mr. Addelman.

 8            MR. ADDELMAN:  Judge, I'd ask that Mr. Yarborough

 9   speak first.

10            THE COURT:  Sure.  Mr. Yarborough, go ahead.

11            THE DEFENDANT:  First I want to apologize to the

12   Court because I never thought I was going to be on this side

13   of the table again.  I never thought I was going to commit a

14   crime.

15            And I want to apologize to my family and my son and

16   my brother and my big brother over there.  I promised them

17   that I never was going to come back to jail, I never was going

18   to be engaged in drugs.  And I told them how much that I

19   really disliked the drugs, and I wanted to be a voice to the

20   people and -- to convince them not to use the drugs or sell

21   the drugs.  And I backslid.  I made a mistake.

22            I thought I was ready when I did all that time when I

23   was incarcerated before, but I backslid.  I let the

24   manipulation get to me.  I thought people was in my corner

25   that was real close to me, I thought I could trust them, and I
```

1 was used, and I made a bad decision that I take full

2 responsibility for.

3          What I do, I want to be today, I learned so much that

4 I want to be a voice for the people.  I want to help people.

5          Your Honor, when I was a -- when I was a kid, I never

6 expected to be looking like this on this side.  I wanted to be

7 a race car driver or a fireman, I never wanted to be no drug

8 dealer.  I didn't know nothing about this stuff.  I thought it

9 was okay when I was coming up, and I see that it wasn't today.

10          And today, I want to help the people, the people that

11 I hurted, the people who saw the things that I did and liked

12 it.  I want to be able to give back to my community and to the

13 people that's all over.  I just want to do the right thing,

14 that's the right thing to do for the world.

15          And that's why I stand here today, Your Honor.  I

16 want to -- I want to do what's right.  I want to help people

17 because that's what I do, I help people.  I give good advice,

18 even though I make a mistake.  But today, I make no more

19 mistakes.

20          My son, he graduated from college.  He's doing very

21 good.  He got a degree in accounting.  And he don't have no

22 parents.  He only got me and my brother and my other brother.

23 He don't have -- he don't have nobody.  His mom died when he

24 was young, and I'm all he got.  He don't got no grandmother,

25 no grandfather, nothing.

USA v Demetrius Yarborough - Sentencing - 3/18/19

15

1          I'm asking -- I'm not throwing that away.  No more.

2     Enough is enough, Your Honor.  That's it, Your Honor.

3          THE COURT:  Thank you.  Mr. Addelman?

4          MR. ADDELMAN:  The sentiments the Court has just

5     heard have been consistently expressed to me during the

6     duration of my representation.  I have questioned

7     Mr. Yarborough, because this isn't his first rodeo.  And his

8     expressions that he's learned from this, I followed up with a

9     couple of questions.

10          He indicated to me, and I don't know if this was

11     intentional that he didn't raise it now or not, but he said

12     that the opioid crisis has made a difference to him.  When he

13     was a younger man making decisions, some of them bad

14     decisions, he wasn't thinking of people dying from this like

15     they are now.

16          Now, obviously, drugs have always been a negative

17     factor in our society and he should have been more attuned to

18     this.  But he seems highly sensitized to the problems that

19     drugs are causing in our society.

20          As indicated, he's got a young man that he's

21     responsible for raising who just graduated from ECC with a

22     degree in accounting, and he's very proud of that.

23          He wants to spend whatever time he has left, he's 52

24     years old, not creating problems, but hopefully educating

25     younger people to stay clear of the mistakes that he's made.

1          In this investigation, he was talking kind of loosely

2    about people he trusted.  His wife ended up being, we believe,

3    a witness against him.  And to my knowledge, she was an

4    unindicted co-conspirator in that she was -- admitted that she

5    was involved and she blamed him for everything.

6          He knowingly committed crimes, and for that he's

7    responsible and he deserves a sentence that's sufficient but

8    not greater than necessary, and we acknowledge that, but a lot

9    of things would have come up had he gone to trial that will

10   not now.

11         In any event, Judge, what I'm getting to is that in

12   sentencing the man that's standing before you, we submit that

13   a 60-month sentence would be sufficient to accomplish the

14   objectives of sentencing, and we would ask the Court to

15   consider that as an appropriate sentence.

16         THE COURT:  Okay.  Thank you.

17         Do either counsel know of any reason why sentence

18   should not now be imposed?

19         MR. TRIPI:  No, Your Honor.

20         MR. ADDELMAN:  I do not.

21         THE COURT:  Okay.  Pursuant to the Sentencing Reform

22   Act of 1984 and the 2016 version of the guidelines, it's the

23   judgement of the Court that the defendant Demetrius Yarborough

24   is hereby sentenced to 84 months of imprisonment.  The cost of

25   incarceration fee is waived.  Upon release, the defendant

1   shall be placed on supervised release for a term of five

2   years.  After his release, the following conditions shall

3   apply:

4           Within 72 hours of release from custody of the Bureau

5   of Prisons, the defendant shall report in person to the

6   probation office in the district where he is released unless

7   his probation officer instructs him differently.

8           The defendant shall comply with the standard

9   conditions of supervised release adopted by the Court.

10          The defendant shall not commit any crimes under

11  federal, state or local law.

12          The defendant shall not possess a firearm, ammunition

13  or other dangerous device.

14          The defendant shall not possess a controlled

15  substance except as prescribed by a physician.

16          The defendant shall cooperate in the collection of a

17  DNA sample as required by the Justice For All Act of 2004.

18          The defendant shall participate in a program for

19  substance abuse, including substance abuse testing, such as

20  urinalysis and other testing, and shall undergo a drug/alcohol

21  evaluation and treatment if substance abuse is indicated by

22  the testing.  The probation officer will supervise the details

23  of any testing and treatment, including the selection of a

24  treatment provider and schedule.  If inpatient treatment is

25  recommended, however, it must be approved by the Court unless

1    the defendant consents.  The defendant is not to leave

2    treatment until completion or as ordered by the Court.

3           While in treatment and after discharge from

4    treatment, the defendant is to abstain from using alcohol.

5    The defendant is required to contribute to the cost of

6    services rendered.

7           I'm imposing this special condition because drug

8    testing is required by the 1994 Crime Control Act, and because

9    of the defendant's prior use and abuse of drugs as detailed in

10   paragraphs 128 through 131 of the presentence report, and the

11   condition -- it -- it serves the statutory sentencing purposes

12   of deterrence, public protection and rehabilitation.

13          The defendant shall submit to a search of his person,

14   property, vehicle, place of residence, or any other property

15   under his control based on reasonable suspicion, and permit

16   confiscation of any evidence or contraband discovered.

17          I'm imposing this condition because the offense of

18   conviction involved drugs which can easily be hidden, and

19   because the condition therefore serves the statutory

20   sentencing purposes of deterrence and public protection.

21          The defendant shall pay to the United States a

22   mandatory special assessment of $100 due immediately, payment

23   to be made to the Clerk, United States District Court,

24   Attention Finance, United States Courthouse, 2 Niagara Square,

25   Buffalo, New York 14202.

USA v Demetrius Yarborough - Sentencing - 3/18/19

19

1          If the special assessment is not paid when he's

2    incarcerated, payment shall begin under the Bureau of Prisons

3    Inmate Financial Responsibility Program.

4          So in determining the sentence, I've reviewed all the

5    circumstances of the case, and it is a very involved case, and

6    the defendant's plea.  I began my analysis with the

7    guidelines.  I've considered the arguments raised by both

8    sides as to what the appropriate sentence should be.  And,

9    most importantly, I've considered the factors in 18, United

10   States Code, Section 3553(a) which I stated earlier and I

11   won't repeat now.

12         I'm not imposing a fine.  I'm not imposing the costs

13   of imprisonment or the costs of supervised release because I

14   don't believe you have the financial ability to make those

15   payments, and because I think that would have a

16   disproportionate impact on the folks on the outside.

17         So why did I impose the sentence that I did?  Well,

18   first of all, selling drugs is a serious crime, especially in

19   the amounts that we're talking about here.  You -- you --

20   you've admitted to being involved in the distribution of

21   3 kilograms, about, of cocaine.

22         And even apart from paragraph 24 which is the

23   paragraph that your lawyer raises some issues about, that

24   suggests that you're a midlevel drug dealer at least with

25   respect to the cocaine that you were -- you were dealing in.

1   And that's a -- and that's serious.  That's very serious

2   stuff.

3           You also have a very poor criminal history.  And, you

4   know, I listened to you talk the talk now, Mr. Yarborough, but

5   you haven't demonstrated the ability to walk the walk even

6   though you -- I'm sure you told yourself you were not going to

7   get involved in this again.  I believe you when you tell me

8   that.  But you haven't been able to -- to follow through on

9   that.

10          So some of your convictions -- you're fortunate that

11  some of your convictions were too old to count and your

12  criminal history category ended up being substantially less

13  than your lawyer and the government thought when they

14  negotiated the plea agreement.

15          But that doesn't change the fact that you had 15

16  arrests, six criminal convictions that I count, three for

17  felonies, two of those convictions in federal court, two

18  involving weapons or violence, one conviction that you were

19  sentenced to ten years for in federal court.  And then there's

20  three violation of probation and parole or supervised release.

21  That's not a good track record.

22          Now, you have a superb lawyer who negotiated a great

23  deal for you, and I actually gave some thought to rejecting

24  the 11(c)(1)(C) plea because it is such a good deal for you,

25  and I gave some very serious thought to sentencing you at the

1  very high end of that, the 90 months.

2        I decided not to do that for a couple reasons:

3  Number 1, because I think that your prior use of drugs is at

4  least in part to blame for your standing here in front of me.

5  And the fact that were clean for a number of years shows that

6  you have it in you to do it.

7        You relapsed, as you said yourself in your remarks.

8  But you can do it if you put your mind to it.  And you've got

9  reasons sitting in the back of the courtroom, especially one,

10  your son.  That's a good reason to do that.

11        And it's remarkable to me that your son is doing so

12  well because so often our kids do not what we tell them.  You

13  said you give good advice.  Even though you may not do the

14  right thing, you know how to tell kids what to do and what not

15  to do.  And so many of the defendants who appear in front of

16  me, I see that, because -- because the letters or the

17  presentence report or what people say about them is that

18  they're a good family man, a good role model for kids.  Some

19  of them coach sports with the kids, and the message that they

20  give the kids when they're coaching the sports, when they're

21  talking to their own kids, is don't do drugs, don't sell

22  drugs.  Do what's legal.  Live a good life.

23        But the reason that we have this awful vicious circle

24  that we have today is because so many people like you are

25  saying one thing and doing another, and then the kids see, and

USA v Demetrius Yarborough - Sentencing - 3/18/19

22

1  they say I want to be just like him, he's a great guy, he's my

2  coach, he's my dad, he's my uncle, and I want to be just like

3  him.  And they see you doing this stuff, and they end up doing

4  this stuff.

5           And that's why we have generation after generation

6  getting involved in this stuff.  It's got to stop.  It's got

7  to stop.  And the only way it's going to stop is by people

8  like you not only telling them what to do, but showing them.

9  Showing them.

10          And when you get out, you're going to have a lot of

11  years left, and you're going to be able to do that with the

12  rest of your life, and I hope to God you do, and I know that

13  you have it in you to do it.

14          But I think that the nature and the seriousness of

15  the offense, your history and characteristics, the need to

16  promote respect for the law because of the number of

17  violations and crimes that you've committed over and over

18  again, the need to provide for a fair punishment, the need to

19  promote deterrence, the need to protect the public, and

20  importantly the need for consistency in sentencing including

21  the codefendants in your case, those that I've sentenced

22  already and those that I will sentence in the future, and the

23  need for consistency in sentencing with respect to people who

24  have done the sorts of things that you did, all require a

25  sentence toward the higher end of the negotiated range and

1   above the computed guidelines, and that's what -- and that's

2   what I've imposed.

3          And I've also imposing the high end term of

4   supervised release with special conditions.  That's intended,

5   number 1, to help you return to society after your

6   incarceration, but it's also going to allow the probation

7   office to monitor your activities to ensure that you don't

8   engage in further illegal activity.

9          I'm going to recommend that your sentence be served

10  and the Bureau of Prisons place you in a facility as close to

11  Western New York as you can be so that your family members can

12  visit you as much as they can.

13         And I'm also going to recommend that you be placed in

14  a facility that has the wherewithal to provide whatever

15  substance treatment that you need.  I'm not going to recommend

16  the RDAP program because I just think that there's been too

17  much of a pattern of illegal conduct here to give you the

18  benefit of that.  But I am -- I do think, as I said, that

19  your -- your -- your drug use is one of the reasons that

20  you're standing here, and I recognize that -- that addiction

21  is an ugly thing and I think that you ought to get some

22  treatment for that.

23         And I think that if you get treatment on the inside,

24  that will make the transition easier when you get the

25  treatment on the outside so that will at least have you

1    pointed in the right direction and moving in the right

2    direction when you're released.

3            So based on the guidelines, based on the positions of

4    the parties, based on my review of all the facts and

5    circumstances presented to me, I think that the sentence I've

6    imposed is sufficient but not greater than necessary to comply

7    with the purposes of sentencing set forth in 18, United States

8    Code, Section 3553(a).

9            Pursuant to Rule 32(j)(1)(B) of the Federal Rules of

10   Criminal Procedure, I now advise you of your right to appeal.

11           You have a statutory right to appeal your sentence

12   under certain circumstances, particularly if you think the

13   sentence is contrary to law.  A defendant may waive those

14   rights as part of a plea agreement.

15           As I think you recognize, Mr. Yarborough, you entered

16   into a plea agreement in which you waived some of your rights

17   to appeal, specifically your rights to appeal a sentence that

18   falls within or is less than the range of imprisonment that

19   was negotiated pursuant to your 11(c)(1)(C) plea.

20           Waivers like these are generally enforceable.  If you

21   think the waiver is unenforceable, you can present that theory

22   to an appellate court.

23           If you want to attempt to appeal some issue that you

24   think survives your waiver, you must file a notice of appeal

25   within 14 days.

1          And if you're unable to pay for the cost of an

2     appeal, you may apply for leave to appeal in forma pauperis,

3     that means leave to appeal without paying costs.

4          You have the right to be represented by counsel in

5     any appeal.  If you can't afford counsel, you have the right

6     to have counsel appointed to represent you free of charge.

7          The government has a motion?

8          MR. TRIPI:  I do, Your Honor.  We'd ask to dismiss

9     Count 3 of the second superseding indictment that charged this

10    defendant, dismiss it as to him.

11         THE COURT:  Yes.  That motion is granted as to this

12    defendant only.  Anything further from the government?

13         MR. TRIPI:  No, Your Honor.  I just had one point of

14    clarification.  I assume the $100 special assessment was

15    ordered?  I just --

16         THE COURT:  Did I -- did I say it?

17         USPO BLACKMAN:  Yes, Your Honor.

18         MR. TRIPI:  Sorry.  I missed it.  That's all.  Thank

19    you.

20         THE COURT:  Anything further from you, Mr. Addelman?

21         MR. ADDELMAN:  Nothing further.

22         THE COURT:  Okay.  The statement of reasons shall be

23    included in the judgement and shall be provided to the

24    probation office, to the Sentencing Commission and to the

25    Bureau of Prisons.

1          A complete copy of the presentence report shall be

2   provided to the probation office, to the Sentencing Commission

3   and to the Bureau of Prisons.

4          Any other copies of the report and related material

5   shall remain confidential.

6          And if an appeal is taken, counsel on appeal will be

7   given access to the report except, as I said, the

8   recommendations section at the end of the report.

9          A judgment of the conviction should be prepared

10   promptly on the form prescribed for judgments, including

11   sentences under the Sentencing Reform Act.

12          And the defendant is remanded to the custody of the

13   marshals.

14          Good luck to you, sir.  I mean, I hope -- I hope that

15   the talk you talk so well now turns into walking the walk, and

16   that you do what you say you want to do, because you've got a

17   unique opportunity to -- to -- once you get out, as I say,

18   when you get out, you're still going to have a lot of years

19   left.  You're going to be a lot younger than I am when you get

20   out.  And you're going to be able to do some good by telling

21   people look at what happened to me.  I made the wrong

22   decisions.  Don't just listen to what I'm telling you, look at

23   what happened to me.  And have an impact on the lives of those

24   folks, and leave the world a better place because you were in

25   it.  And I hope you do that.

USA v Demetrius Yarborough – Sentencing – 3/18/19                27

1          Thanks to everyone.

2          THE DEFENDANT:  I will, Judge.

3          MR. TRIPI:  Thank you, Your Honor.  Have a good day.

4          (Proceedings concluded at 1:08 p.m.)

5              *      *      *      *      *      *      *

6

7

8

9

10

11

12                          **CERTIFICATION**

13

14              I certify that the foregoing is a

15      correct transcription of the proceedings

16      recorded by me in this matter.

17

18

19

20                  s/ Ann M. Sawyer
                    Ann M. Sawyer, FCRR, RPR, CRR,
21                  NYRCR, NYACR, Notary Public
                    Official Reporter
22                  U.S.D.C., W.D.N.Y.

23

24

25